IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Submitted on Briefs, February 26, 2009

## JOYCE HOLT, v. STATE OF TENNESSEE, Department of Children's Services

Direct Appeal from the Juvenile Court for Hamblen County
Nos.  8871, 9942, 10656, 12868      Hon. Mindy Norton Seals, Judge

No. E2007-02798-COA-R3-JV  - FILED MAY 1, 2009

Plaintiff mother who had formally surrendered parental rights to her five children on March 21, 2007, brought this proceeding to vacate the order of surrender in September of 2007.  Following an evidentiary hearing, the Trial Court determined there was no evidentiary basis to set aside the mother's surrender of her parental rights.  On appeal, we affirm.

Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Paul Whetstone, Morristown, Tennessee, for appellant, Joyce Holt.

Robert E. Cooper, Jr., Attorney General and Reporter, and Amy T. McConnell, Assistant Attorney General, Nashville, Tennessee, for appellee, State of Tennessee, Department of Children's Services.

## OPINION

During a trial wherein the Department of Children's Services ("Department") sought to terminate the parental rights of plaintiff, plaintiff on the advice of counsel, executed surrender of her parental rights to her five children on March 21, 2007.  The father of the children had previously surrendered his parental rights in February of 2007.

Plaintiff brought a proceeding to vacate the order of surrender in September of 2007,

asserting that she was never provided a copy of the Court's order until August 2007, that she was never advised of the time parameters within which she could appeal, that the surrender was involuntary and not a product of her free will, and that the surrender was based on coercion, fear, confusion, and lack of understanding.

The Trial Court conducted a hearing on November 15, 2007, and entered an Order on November 29, 2007, denying plaintiff relief.

The Trial Court found that the mother's statutory time limit to revoke the surrenders had expired, pursuant to Tenn. Code Ann. §36-1-112(a)(1)(F)(I), which specified a ten day time limit, and also pursuant to Tenn. Code Ann. §36-1-112(d), which specified that no surrender "shall be set aside by a court except upon clear and convincing evidence of duress, fraud, intentional misrepresentation or for invalidity under 36-1-111(d) and no surrender . . . may be set aside for any reason under this part unless the action based on these grounds is initiated within thirty (30) days of the execution of the surrender . . .". The Court concluded that the mother did not file this action until five months after the surrenders were executed.

The Court further found that the surrenders were voluntary and that the mother had not shown that there was fraud, intentional misrepresentation, duress, or invalidity under Tenn. Code Ann. §36-1-111(d). The Court held the majority of the mother's testimony was not credible, and that the mother testified that she knew as soon as she left court on March 8, 2007, that she wanted to revoke the surrenders, but did not go to her attorney's office during the ten day revocation period, and she did not tell the CASA worker who was in her home two days later that she wanted to revoke. The CASA worker also coordinated a final visit between the mother and the children in August, but the mother did not attend.

The Court reiterated the testimony of Loren Brooks, paralegal to the mother's former attorney, who testified that the mother and her former attorney came to the attorney's office after the surrenders were executed on March 8, 2007, and the attorney handed the revocation forms to Ms. Brooks, and advised the mother to come back to the office within ten days if she changed her mind. The Court stated that Ms. Brooks talked to the mother by phone in July 2007, to arrange the final visit. The Court further reiterated that the mother testified that the Court asked her if she understood the surrender, and further informed her that she had ten days to revoke. The Court found that the mother testified that she knew what the period of revocation meant, and that the mother was satisfied with the surrenders until she missed the final visit in August which DCS would not reschedule. The Court found the mother had complained that she did not get a copy of the Order of Complete Guardianship until August 2007, but the mother surrendered her rights in March and was not entitled to further notice regarding the children.

The plaintiff the mother raised these issues on appeal:

1. Whether the evidence adduced at the hearing preponderates against the Trial Court's findings of fact?

-2-

2.       Whether the technical flaws and the absence of a transcript of the surrender should mandate a reversal of the Trial Court?

The mother argues the Trial Court's findings of fact were erroneous, and that the evidence preponderates otherwise. The trial court's findings come to this Court with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13. If the trial court's factual determinations are based on its assessment of witness credibility, this Court will not reevaluate that assessment absent clear and convincing evidence to the contrary. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

The mother asserts that the evidence adduced at trial preponderates against the Trial Court's findings, and that much of her testimony was unrebutted. The record demonstrates that the mother's testimony was inconsistent, and when it was not contradicted by another witness, it was contradicted by the mother herself and by the documentary evidence. For example, the mother claimed that when she signed the surrender forms, her attorney had five sheets of paper stacked up and asked her to sign each one. She testified that she never saw the full packets. The exhibits show, however, that the mother signed each surrender packet in multiple places. Further, the mother admitted that she provided all the detailed information on the family and health questions to her attorney as she was filling out the forms.

The mother also claimed that she did not know what was on the forms and that no one explained it to her, but then she later admitted that her attorney and the Judge read to her from the documents, and that the Court explained the ten day revocation period and the mother understood what it meant. She claimed that she was under duress from her attorney's predictions regarding what might happen if she got her children back, but later admitted that the attorney did not mislead her in any way, and that in her opinion, everything the attorney told her was factually true.

The mother testified that she immediately regretted her decision to surrender her rights and went back to her lawyer's office that very day to try to revoke it, but this testimony was rebutted by the paralegal, who testified that the next contact with the mother was in July to schedule the final visit. Upon review, the evidence does not preponderate against the Trial Court's findings. Tenn. R. App. P. 13(d).

The mother also seeks relief under Tenn. R. Civ. P. 60, in order to escape the time limitations contained in the surrender statutes. A similar plea was made in the case of *Killion v. Tennessee Dept. of Human Services*, 845 S.W.2d 212 (Tenn. Dec 28, 1992), wherein the Supreme Court stated:

> However, contrary to the holding of the Court of Appeals, Rule 60 does not authorize the revocation of a surrender on the ground that revocation is in the best interest of the child. The complaint obviously does not allege facts that constitute a basis for relief under subsections (1) to (4) of Rule 60.02, which provide that a court "may relieve a party ... from a final judgment ... for the following reasons: (1) mistake,

-3-

inadvertence, surprise, or excusable neglect; (2) fraud, ... misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; [or] (4) the judgment has been satisfied...." In addition, the Rule provides that application for relief under subsections (1) and (2) must be made within one year from the entry of the judgment. Apparently, the Court of Appeals found that relief could be granted under the general language of subsection (5), which allows relief for "any other reason justifying relief from the operation of the judgment."

The circumstances of this case do not bring it within the terms of subsection (5). The substance of the plaintiff's allegations is a change of circumstances. She alleges that she has recovered her health, that there is no reasonable expectation that the child will be adopted, and that revocation of the surrender would remove a legal obstacle to the development of a relationship between the child and her that would be beneficial to the child. These allegations may be relevant to an action for custody or adoption, but they do not constitute grounds to set aside a judgment under Rule 60.

The purpose of Rule 60 is to alleviate the effect of an oppressive or onerous final judgment. "Rule 60.02 'was designed to strike a proper balance between the competing principles of finality and justice.' " This rule "is not meant to be used in every case in which the circumstances of a party change after the entry of a judgment or order." " 'Rule 60.02 acts as an escape valve from possible inequity that might otherwise arise from the unrelenting imposition of the principle of finality imbedded in our procedural rules.' Because of the importance of this 'principle of finality,' the 'escape valve' should not be easily opened."

The principle of finality is of paramount importance in this area of the law.

*Id.* at 213-214.

The Supreme Court recognized that Tenn. R. Civ. P. 60 could be used in proper circumstances to vacate an order surrendering parental rights, but also made clear that finality was "of paramount importance" in this area, and that Rule 60 was an escape valve that should not be easily opened. *Id.* The mother has alleged that she was coerced into surrendering her rights, and that she did not act of her own free will, but she has not met the requirements of Rule 60, i.e., there was no mistake, surprise or excusable neglect, and there was no misrepresentation or fraud by an adverse party. While the mother said that she was "terrified" by her attorney's predictions of what might happen if she got her children back, she later admitted that she did not think the attorney told her anything that was misleading or factually incorrect. The mother further admitted that the surrender documents were read to her and that she understood the period of revocation. Accordingly, the mother failed to show that she was entitled to relief pursuant to Rule 60.

Finally, the mother argues that the surrenders should be vacated because her signature was not on one of the pages in one of the surrender packets where it was supposed to be, and also

-4-

because there was no court reporter present and the forms were not notarized. The mother admits that the courts of this State have recognized that it is sufficient to have "substantial compliance" with the requirements of the surrender and adoption laws, which are very technical and complicated in nature. *In re Hatcher*, 16 S.W.3d 792 (Tenn. Ct. App. 1999); *Dorris v. Crisp*, 2001 WL 585100 (Tenn. Ct. App. June 1, 2001).

The record demonstrates that while the mother did not remember a court reporter being present, counsel for the State and the Judge remembered otherwise, and a statement was put into the record reflecting same. Further, the forms did not need to be notarized since the mother's surrenders were made directly before the Judge, who administered the oath to the mother, as demonstrated by the record. The evidence shows that all five surrender documents were done at the same time, and that the Trial Court read parts of the documents to the mother and advised her of her revocation rights. The mother was represented by counsel who helped her fill out all the forms and read portions of the documents to the mother, and advised her of her rights. The Trial Court accepted her surrenders to all five children at that time. While the mother's signature was inadvertently omitted from one page of the surrender packet of JRLD, it appears in other places in the same packet. Moreover, the mother did not claim that she refused to sign that one surrender or that it was different in any way. The Department has shown substantial compliance and there is no basis to void any of these surrenders for procedural defects.

The Judgment of the Trial Court is affirmed and the cause remanded, with the cost of the appeal assessed to Joyce Holt.

_____
HERSCHEL PICKENS FRANKS, P.J.